

103294260

**EXHIBIT 7**

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

PARTNERS FOR PAYMENT RELIEF, LLC
    Plaintiff

KAREEMAH H. WILLIAMS, ET AL
    Defendant

Case No: CV-17-877514

Judge: DICK AMBROSE

## JOURNAL ENTRY

83 DISP.COURT TRIAL - FINAL

ORDER ADOPTING MAGISTRATE'S DECISION.  ORDER SEE JOURNAL.
PURSUANT TO CIV.R. 58(B), THE CLERK OF COURTS IS DIRECTED TO SERVE THIS JUDGMENT IN A MANNER
PRESCRIBED BY CIV.R. 5(B).  THE CLERK MUST INDICATE ON THE DOCKET THE NAMES AND ADDRESSES OF ALL
PARTIES, THE METHOD OF SERVICE, AND THE COSTS ASSOCIATED WITH THIS SERVICE.

_____
Judge Signature               Date
                         CPCEO OED

FILED
2018 APR 10 P 2:50
WINDOW 7
CLERK OF COURTS
CUYAHOGA COUNTY

- 83
04/09/2018

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

| | |
|---|---|
| **Partners for Payment Relief, LLC** | **Case No. CV-17-877514** |
| **Plaintiff,** | **Judge Dick Ambrose** |
| **vs.** | **Magistrate  Christopher E. Day** |
| **Kareemah H. Williams, et al.** | **JUDGMENT ENTRY ADOPTING MAGISTRATE'S DECISION** |
| **Defendants.** | |

This cause is before the Court on the decision of the magistrate, issued March 23, 2018.

The Court finds that Plaintiff failed to demonstrate its standing to bring this case, as Plaintiff could not establish that it properly held the promissory note or mortgage at issue in this case.  See *CitiMortgage, Inc. v. Patterson*, Cuyahoga App. No. 98360, 2012 Ohio 5894 (Dec. 13, 2012).  As concerns the promissory note, Plaintiff failed to demonstrate that it was the proper "person entitled to enforce" the instrument by virtue of either negotiation or as a nonholder in possession with the rights of a holder.  *R.C. §1301.31.*

As concerns the mortgage, the Court finds that Plaintiff's reliance on the "Affidavit of Lost Assignment of Mortgage", without the concurrent pleading of additional equitable relief that addressed the lack of a mortgage assignment to Plaintiff, failed to establish that Plaintiff held the mortgage at the time of the filing of the complaint.

The Court further finds that Plaintiff's failure to demonstrate its standing to bring this case prevents Plaintiff from invoking this Court's jurisdiction to consider the instant action. *Bank of America, N.A. v. Kuchta* (2014), 141 Ohio St.3d 75, paragraph 3 of the syllabus, 21

N.E.3d 1040.  As this Court's jurisdiction was never properly invoked, the Court finds that dismissal of the complaint without prejudice is appropriate.

The Court adopts the Magistrate's Decision dated March 23, 2018.

**IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED** that the complaint is dismissed without prejudice, as this Court lacked jurisdiction to consider the action resulting from Plaintiff's failure to establish its standing to bring this case.

No just reason for delay.

**IT IS SO ORDERED.**

_____

Judge Dick Ambrose



CV17877313

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

**FILED**

| | | |
|---|---|---|
| PARTNERS FOR PAYMENT RELIEF, LLC | ) | CASE NO. CV-17-877204 **2018 MAR 23 P 1: 06** |
| | ) | |
| Plaintiff | ) | JUDGE DICK AMBROSE **CLERK OF COURTS** |
| | ) | **CUYAHOGA COUNTY** |
| v. | ) | MAGISTRATE CHRISTOPHER E. |
| | ) | DAY |
| KAREEMAH H. WILLIAMS, et al | ) | |
| | ) | **MAGISTRATE'S DECISION** |
| Defendants | ) | |
| | ) | |

This cause came on for trial on February 5, 2018. After considering the arguments and testimony offered by Plaintiff and defendant Kareemah H. Williams ("Williams"), the Magistrate makes the following findings of fact and conclusions of law.

## I.   FINDINGS OF FACT

1.    On or about September 5, 2000, Williams executed a promissory note ("the Note") in favor of Millennium Bank, NA ("Millennium").

2.    On or about the same date, Williams also granted Millennium a mortgage ("the Mortgage"), secured by the property at issue in this case.

3.    Millennium specifically endorsed the Note to Residential Funding Corporation ("Residential").

4.    Millennium assigned the Mortgage to Chase Manhattan Bank as *Indenture Trustee* (emphasis added) ("Chase as Indenture Trustee").

5.    Residential specifically endorsed the Note to Chase as Indenture Trustee.

6.    On or about September 8, 2014, Plaintiff recorded a document captioned "Affidavit for Lost Assignment of Mortgage" ("Lost AoM Affidavit") with the Cuyahoga County Recorder.

1

7.     In the Lost AoM Affidavit, Plaintiff stated that an assignment of the Mortgage from "Bank of New York Mellon Trust Company, N.A. fka Bank of New York Trust Company, N.A., as successor to JPMorgan Chase Bank, N.A. fka Chase Manhattan Bank as Trustee" ("BoNY as Trustee") to Plaintiff was unobtainable and unrecordable.

8.     The Lost AoM Affidavit neither stated that the lost mortgage assignment sought to transfer all of BoNY as Trustee's right and interest in the subject mortgage loan nor referenced the Note.

9.     As concerns the Note, BoNY as Trustee executed an allonge to "Dreambuilder Investments, LLC" ("Dreambuilder") and Dreambuilder executed an allonge to Plaintiff.

10.     BoNY as Trustee's name failed to include any reference to "Chase Manhattan Bank as *Indenture* Trustee".

11.     Plaintiff took possession of the Note and Mortgage in 2013, after purchasing a pool of loan instruments (including the Note and Mortgage) from Dreambuilder.

12.     The case record fails to include any evidence of a transfer of the Note from either Chase as Indenture Trustee to BoNY as Trustee, or from Chase as Indenture Trustee directly to Plaintiff.

13.     The case record also fails to include additional equitable claims for relief pleaded by Plaintiff, in order to address the gap in the chain of mortgage assignments caused by the Lost AoM Affidavit.

## II  CONCLUSIONS OF LAW

### A.  Evidentiary Issues

#### 1.  Self-Authenticating Documents

Rule 902 of the Ohio Rules of Evidence outlines the types of documents deemed to be self-authenticating. Section (8) of the Rule specifically states that acknowledged documents are considered self-authenticating ("Documents accompanied by a certificate of acknowledgment executed in the manner provided by law by a notary public or other officer authorized by law to take acknowledgments.").

During the February 5th bench trial, Plaintiff introduced numerous documents into the evidentiary record; at the close of the trial, Plaintiff's counsel moved for admission of the evidence and counsel for Williams objected to fifteen individual documents. Of the documents to which Williams's counsel objected, certain documents are admissible as self-authenticating documents, pursuant to Evid.R. 902(8). Exhibit C (a copy of the original unrecorded mortgage), Exhibit D (a copy of a blank unrecorded assignment of mortgage from "Millennium Bank"), Exhibit F (a copy of the recorded mortgage), Exhibit G (a copy of a recorded assignment of mortgage from "Millennium Bank" to "The Chase Manhattan Bank as Indenture Trustee"), and Exhibit O (a copy of a limited power of attorney in which "The Bank of New York Mellon Trust Company, N.A. formerly known as The Bank of New York Trust Company, N.A., as successor in interest to JPMorgan Chase Bank, National Association" appointed "Residential Funding Company, LLC" as its attorney-in-fact) are documents containing signatures that were acknowledged by notaries public. As acknowledged documents, the five exhibits described above are self-authenticating under Evid.R. 902(8). Williams's objections to the admission of

3

Exhibits C, D, F, G, and O are, therefore, overruled and Plaintiff's oral motion to admit evidence is granted as to these exhibits only.

### 2. Authentication of Documents Prepared by an Entity Other Than a Witness's Employer

A witness authenticating a document does not need to possess personal knowledge of how the document was actually created. *Bank of New York Mellon v. Roulston*, Cuyahoga App. No. 104908, 2017 Ohio 8400 (Nov. 2, 2017), citing *State v. Davis* (1991), 62 Ohio St.3d 326, 581 N.E.2d 1362. The witness must, however, have personal knowledge of the record-keeping system in which the document being authenticated is kept and maintained. *Roulston*, supra, citing *Hetzer-Youngv. Precision Airmotive Corporation* (2009), 184 Ohio App.3d 516, 921 N.E.2d 683; see *Keeva J. Kekst Architects v. George*, Cuyahoga App. No. 70835, 1997 Ohio App. LEXIS 2077 (May 15, 1997) (the witness must show "that he or she is sufficiently familiar with the operation of the business and with the circumstances of the preparation, maintenance, and retrieval of the record in order to reasonably testify on the basis of this knowledge that the record is what it purports to be, and was made in the ordinary course of business.") A witness fails to demonstrate a "working knowledge of the specific record-keeping system that produced the document" when he or she testifies to simply receiving and retaining business records from another company. *Roulston*, supra, citing *Monroe v. Steen*, Summit App. No. 24342, 2009 Ohio 5163 (Sept. 30, 2009).

As noted above, Plaintiff offered various documents as evidence during the February 5th trial. With the introduction of each document, Plaintiff's witness, Robert Paulus ("Paulus"), was asked to authenticate them. Paulus has been an employee of Plaintiff for ten years, and currently serves as a director of borrower management. In his position with Plaintiff, Paulus supervises

4

asset managers and reviews collateral files when cases involving the files become contested; Paulus also maintains control over the contested collateral files. As concerns the specific collateral file containing documents related to Williams's loan, Paulus testified that the file has been in Plaintiff's possession since 2013. Paulus specifically testified that Plaintiff came into possession of the Mortgage and Note by purchasing a pool of mortgages and promissory notes from "Dreambuilder Investments, LLC."

A review of the documents from the collateral file which Paulus purported to authenticate revealed a number of documents prepared by entities other than Plaintiff. Specifically, Exhibits E (identified as "GMAC Mortgage File Header"), H (identified as "Request for Collateral Documents to be Sent"), I (identified as "Homecomings Financial Cover Sheet"), J (a copy of an application for a loan modification agreement from "Homecomings Financial", as completed by Williams), K (a copy of a letter from "Homecomings Financial" to Williams, outlining the terms of a temporary loan modification agreement), L (a copy of a loan modification agreement executed by Williams and "Homecomings Financial Network, Inc."), and N (identified as "Dreambuilder Cover Sheet") are documents prepared by entities other than Plaintiff. During his testimony, Paulus offered no indication of his personal knowledge of the record-keeping systems of either "Dreambuilder Investments, LLC" (the entity from which Plaintiff purchased the pool of mortgages and promissory notes that included Williams's loan) or any of the other entities identified as having played roles in preparing Exhibits H through L and N. Without evidence of his personal knowledge of the record-keeping systems of the entities that prepared the documents described above, Paulus cannot authenticate the documents based solely on his knowledge of when Plaintiff received them and how Plaintiff has maintained them. See *Roulston*, supra. Williams's objections to the admission of Plaintiff's Exhibits H through L, and N are, therefore,

sustained and Plaintiff's oral motion to admit these specific exhibits is denied; Exhibits E, H, I, J, K, L, and N are excluded from this case's evidentiary record.

### 3.    The Remaining Exhibits Introduced By Plaintiff

Having resolved the evidentiary issues involving Exhibits C, D, F through L, N, and O, the status of Exhibits M (copy of check drafted by Williams and made payable to "Homecomings Financial"), R (a copy of an unacknowledged and unrecorded assignment of mortgage from "The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company N.A. as Successor to JPMorgan Chase Bank, N.A. fka The Chase Manhattan Bank as Trustee" to "Dreambuilder Investments, LLC") and BB (a notice of acceleration prepared by Plaintiff's counsel) remains to be determined.  As concerns Exhibits M and BB, the documents are not needed to resolve any issues in this case and will not be admitted into the case's record.  Plaintiff's oral motion to admit exhibits is denied as to these documents.

Exhibit R, the unacknowledged and unrecorded assignment of mortgage from BoNY as Trustee to Dreambuilder, fails to gain admission into the evidentiary record as a self-authenticating document under Evid.R. 902 as a result of its unacknowledged state.  Additionally, the document appears to have been produced by an entity other than Plaintiff.  As noted earlier, Paulus failed to offer testimony regarding his knowledge of any record-keeping systems except for Plaintiff's system.  Under *Roulston*, supra, Paulus is unable to properly authenticate the document.  Williams's objection regarding Exhibit R is, therefore, sustained and Plaintiff's oral motion to admit the document is denied.

### B.    Necessary Elements for a Proper Foreclosure Action

Various Ohio courts have held that foreclosure involves a two-step process.  *PHH Mortgage Corporation v. Barker* (2010), 190 Ohio App.3d 71, 82, 940 N.E.2d 662; *Sovereign*

*Bank v. Flood*, Erie App. No. E-11-072; *First Knox National Bank v. Peterson*, Knox App. No. 08CA28, 2009 Ohio 5096 (Sept. 24, 2009). First, a court reviewing a foreclosure case must determine that a default occurred on an obligation secured by a mortgage. *First Knox*, supra. Once a court determines that a default occurred, it must then consider the equities to determine if foreclosure is the appropriate remedy. *Id.*

A party seeking to foreclose a mortgage must establish proper execution and delivery of a promissory note and mortgage; proper recording of the mortgage; default by the obligor/mortgagor; and, an amount remaining due and owing. *PHH Mortgage Corporation v. Easterling*, Summit App. No. 26316, 2012 Ohio 4916 (Oct. 24, 2012), citing *CitiMortgage, Inc. v. Firestone*, Summit App. No. 25959, 2012 Ohio 2044 (May 9, 2012). At trial, a party establishing the elements of a proper foreclosure action must establish fulfillment of the elements by a preponderance of the evidence.

### C. Enforcement of a Negotiable Instrument

Ohio's version of the Uniform Commercial Code ("UCC"), codified in Chapter 13 of the Revised Code, governs the enforcement of a negotiable promissory note. Specifically, Article 3 of the UCC concerns the creation, transfer, and enforceability of negotiable instruments, including promissory notes secured by mortgages on real property. *Federal Land Bank of Louisville v. Taggart* (1987), 31 Ohio St.3d 8, 10, 508 N.E.2d 152.

### 1. "Person Entitled to Enforce" a Negotiable Instrument

Chapter 1303 of the Revised Code governs promissory notes and their transfers. Pursuant to R.C. §1303.52, a person who executes a promissory note obligates him-or-herself to pay the instrument to a "person entitled to enforce" the instrument. Section 1303.31(A) of the Revised Code defines "person entitled to enforce" as: (1) the holder of the instrument; (2) a

nonholder in possession of the instrument who has the rights of a holder; or, (3) a person not in possession of an instrument entitled to enforce the instrument pursuant to R.C. §1303.38 (enforcement of a lost, destroyed, or stolen instrument) or R.C. §1303.58(D).

### a. Negotiation

The process of negotiation confers the status of a "holder" to an individual. *Deutsche Bank National Trust Company v. Gardner*, Cuyahoga App. No. 92916, 2010 Ohio 663 (Feb. 25, 2010). Section 1303.21(A) defines "negotiation" as, "a voluntary or involuntary transfer of possession of an instrument by a person other than the issuer to a person who by the transfer becomes the holder of the instrument." Subsection (B) of R.C. §1303.21 provides further guidance regarding negotiation, stating, "if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone." A signature accompanied by words made on an instrument in order to negotiate the instrument, constitutes an "indorsement" of the instrument. *R.C. §1303.24(A)(1)(a)*. A paper attached to the indorsed instrument is considered part of the instrument, for purposes of determining whether a signature is made on an instrument (as required by R.C. §1303.24(A)(1)(a)). *R.C. §1303.24(A)(2)*. See, generally, *Cadlerock Joint Venture, L.P. v. Freeway Circle Properties LLC*, Cuyahoga App. No. 96003, 2011 Ohio 3986 (Aug. 11, 2011). Further, R.C. §1303.25 (A)-(B) provides definitions for "special indorsements" and "blank endorsements," as follows:

> (A) A "special indorsement" means an indorsement that is made by the holder of an instrument, whether payable to an identified person or payable to the bearer, and that identifies a person to whom it makes the instrument payable. An instrument, when specially indorsed, becomes payable to the identified person and may be negotiated only by the indorsement of that person…

8

(B)    "Blank indorsement" means an indorsement that is made by the holder of the instrument and that is not a special indorsement. When an instrument is indorsed in blank, the instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.

### b.    Nonholder in Possession With the Rights of a Holder

The holder of an instrument must have the rights of a holder in order to pass that status on to a person who possesses the instrument in the future. R.C. §1303.22(B) ("Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course...") A person does not need to be a "holder" of an instrument in order to have the ability to enforce its terms; a person can be a non-holder in possession of the instrument who has the rights of a holder. *The Bank of New York Mellon v. Grund*, Lake App. No. 2014-L-025, 2015 Ohio 466, citing *LaSalle Bank National Association v. Brown*, Montgomery App. No. 25822, 2014 Ohio 3261 (July 25, 2014).

### 2    Defects in a Negotiable Instruments Chain of Transfers

When a court is faced with a defect in a promissory note's chain of negotiation, it may examine other evidence to demonstrate intent to transfer the instrument. *Federal National Mortgage Association v. Herren*, Cuyahoga App. No. 105088, 2017 Ohio 8401 (Nov. 2, 2017), citing *Gardner*, supra. In *Gardner*, the court looked to contemporaneous mortgage assignments that included language transferring all rights and interest, as well as referencing the accompanying promissory note, in order to determine intent to transfer enforcement rights where proper negotiation did not occur.

### D. Assignment of a Mortgage

Section 5301.32 of the Ohio Revised Code governs the assignment of mortgages by a separate instrument. The statute provides that a mortgage may be assigned by a separate instrument, and that the instrument must be recorded with a county recorder. *R.C. §5301.32*. Where questions remain whether a mortgage was assigned between entities, any extrinsic evidence submitted by the party seeking to enforce the mortgage must demonstrate the circumstances in which it received its interest in the instrument. *U.S. Bank National Association v. Marcino*, Jefferson App. No. 08 JE 2, 2009 Ohio 1178 (Mar. 10, 2009) citing *Everhome Mortgage Company v. Rowland*, Franklin App. No. 07AP-615, 2008 Ohio 1282 (Mar. 20, 2008); see also *Washington Mutual Bank, F.A. v. Green* (2004), 156 Ohio App.3d 461, 806 N.E.2d 604 ("the affidavit did not mention how, when, or whether [the entity seeking to enforce the mortgage] was assigned the mortgage and note.")

### E. Affidavits of Facts Related to Title

An affidavit stating facts related to title in real property may be drafted and recorded pursuant to *R.C. §5301.252*. The affidavit may recite facts concerning possession of real property in question or "the happening of any condition or event that may create or terminate an estate or interest." *R.C. §5301.252(B)*. According to the statute, "When so recorded, such affidavit...shall be evidence of the facts stated, insofar as such facts affect title to real estate." *R.C. §5301.252(A)*. While the affidavit is evidence of the facts, as related to title, stated within it, the affidavit itself is incapable of creating an interest in real property or an encumbrance on title to real property. *Catawaba West, Inc. v. Domo* (1991), 75 Ohio App.3d 80, 83, 598 N.E.2d 883; see also *The Croghan Colonial Bank v. Olena Food Farm, Inc.*, Huron App. No. H-13-006,

2013 Ohio 4520 (Oct. 11, 2013) (a mortgagee whose mortgage was inadvertently released must seek "an equitable reinstatement of its lien.")

### F. Standing in a Foreclosure Action

An analysis of standing necessitates a court's determination of "whether a party has alleged a personal stake in the outcome of the controversy to ensure the dispute will be presented in an adversarial context." *Bank of New York Mellon v. Grund*, Lake App. No. 2014-L-025, 2015 Ohio 466 (Feb. 9, 2015), citing *Mortgage Electronic Registration Systems, Inc. v. Petry*, Portage App. No. 2008-P-0016, 2008 Ohio 5323 (Oct. 10, 2008). In order to establish its standing to prosecute a foreclosure action, the foreclosing party must establish that it held either the mortgage or promissory note on which its claims rest, prior to the filing of its complaint. *CitiMortgage, Inc. v. Patterson*, Cuyahoga App. No. 98360, 2012 Ohio 5894 (Dec. 13, 2012). Standing is a jurisdictional matter, and lack of it impedes a party's ability to invoke a court's jurisdiction over his or her particular action. *Bank of America, N.A. v. Kuchta* (2014), 141 Ohio St.3d 75, paragraph 3 of the syllabus, 21 N.E.3d 1040.

### G. Specific Findings Regarding the Issues in This Case

#### 1. Plaintiff Cannot Demonstrate its Status as a "Person Entitled to Enforce" The Note, Pursuant to R.C. §1303.31

Millennium originated the Mortgage and Note at issue in this case. Millennium assigned the Mortgage to "Chase as Indenture Trustee Manhattan Bank as *Indenture* Trustee" (emphasis added) (previously abbreviated to "Chase as Indenture Trustee"); for purposes of clarification, an "indenture trustee" is defined as, "A trustee named in a trust indenture and charged with holding legal title to the trust property; a trustee under an indenture." *Black's Law Dictionary* 1230 (7th ed. 2000). Further, a "trust indenture" is defined as "The document which contains the terms and

11

conditions which govern the conduct of the trustee and the rights of the beneficiaries." *Black's Law Dictionary* 770 (6th ed. 1990). On September 8, 2014, Plaintiff caused Lost AoM Affidavit to be recorded with the Cuyahoga County Recorder. In the Lost AoM Affidavit, Plaintiff attempted to explain that an assignment of the Mortgage from BoNY as Trustee to Plaintiff was unobtainable and unrecordable.

As concerns the Note, Millennium specifically endorsed the Note to Residential. Residential then specifically endorsed the Note to Chase as Indenture Trustee; Chase as Indenture Trustee did not execute any instruments transferring the Note to any other entity. Additionally, BoNY as Trustee executed an allonge to Dreambuilder, and Dreambuilder executed an allonge to Plaintiff.

**a.**     **Plaintiff Failed to Demonstrate its Status as a Holder of the Note Through Negotiation Alone**

During his testimony, Paulus stated that Plaintiff took possession of the Note in 2013. Possession of the instrument alone does not, however, equate to being its holder under R.C. §1303.31. In order to be consider the "holder" of the Note, Plaintiff would need to fit into one of the categories enumerated in R.C. §1303.31. Throughout the pendency of this case (including during the bench trial), Plaintiff has relied on a chain of note transfers ostensibly ending with itself, in order to establish its status as holder of the Note. A review of the chain of transfers reveals, however, that a gap exists within it. As previously noted, Residential specifically endorsed the Note to Chase as Indenture Trustee, then from BoNY as Trustee to Dreambuilder. A close examination of these endorsements shows that the entity to which the Note was earlier transferred (i.e. Chase as Indenture Trustee), differs from the entity that subsequently sought to transfer the Note (i.e. BoNY as Trustee), in that the latter's lengthy name does not include the

phrase "Indenture". As a result of the lack of a connection between Chase as Indenture Trustee and BoNY as Trustee, the last entity to which the Note was properly transferred was Chase as Indenture Trustee. Notably, the record fails to include any evidence of a transfer between Chase as Indenture Trustee and BoNY as Trustee, or a direct transfer from Chase as Indenture Trustee to Plaintiff. Paulus's testimony did not provide an explanation for either the gap in the transfers of the Note, as described above, or the lack of any transfers of the Note between either Chase as Indenture Trustee and BoNY as Trustee or Chase as Indenture Trustee and Plaintiff. Plaintiff cannot, therefore, establish its status as holder of the Note through negotiation.

**b.      Plaintiff Cannot Demonstrate its Ability to Enforce the Note as a Nonholder in Possession With the Rights of a Holder**

Rather than demonstrating its status as "holder" of the Note through negotiation, Plaintiff could instead demonstrate that it was a "person entitled to enforce" the Note as a nonholder in possession of the Note with the rights of a holder. According to the record of this case, and as discussed earlier, Chase as Indenture Trustee was the last entity to which the Note was transferred, bestowing on it the status of a "holder" of the Note. A further review of the record indicates, however, that, following a purported transfer from BoNY as Trustee to Dreambuilder, the latter entity then executed a specific endorsement of the Note to Plaintiff.

While Plaintiff established its physical possession of the Note (satisfying the "in possession" portion of this particular status), the unanswered question remains, does Plaintiff also have the rights of a holder? After reviewing the evidence and the record of this case, the answer to this question is "no". BoNY as Trustee, the entity that attempted to transfer the Note to Dreambuilder (the entity that then attempted to transfer the Note to Plaintiff), retained no ability to enforce the terms of the instrument when it executed the allonge to Dreambuilder. The

lack of either a specific endorsement from Chase as Indenture Trustee to BoNY as Trustee, or any evidence of a delivery of the Note from Chase as Indenture Trustee to BoNY as Trustee (for the purpose of giving BoNY as Trustee the right to enforce the instrument) creates an ultimately-fatal obstacle to Plaintiff's assertion that it is the proper party entitled to enforce the Note in this suit. Without a clear indication that Chase as Indenture Trustee intended for BoNY as Trustee to obtain the ability to enforce the Note's terms, any transfers of the Note after Chase as Indenture Trustee became the instrument's holder were simply transfers of some collated papers. In other words, the purported transfers of the Note from BoNY as Trustee to Dreambuilder, and from Dreambuilder to Plaintiff, may have shifted physical possession of the instrument between entities, but were devoid of any assumption by the transferees of the right to enforce the terms of the Note. As Plaintiff possesses the original signed copy of the Note, but was never imbued with the ability to enforce its terms, Plaintiff cannot assert its status as an entity "entitled to enforce" the Note as a nonholder in possession with the rights of a holder.

The final category of "persons entitled to enforce" a promissory note is "a person not in possession of an instrument entitled to enforce the instrument pursuant to R.C. §1303.38 [enforcement of a lost, destroyed, or stolen instrument] or R.C. §1303.58(D) [mistaken payment or acceptance of an instrument]." As no case party asserts that either the Note is lost, destroyed, or stolen, or that the Note was mistakenly paid or accepted, the Magistrate will not examine Plaintiff's potential status as holder of the Note under this category.

## 2. An Intention to Properly Transfer the Note Cannot be Established Through the Review of Any Additional Evidence in This Case

When presented with a defect in the chain of endorsements of a promissory note, a court may examine other evidence to establish an intention to transfer the instrument. *Herren*, supra.

14

A defect in the chain of negotiation of the Note exists in this case, namely between Chase as Indenture Trustee and BoNY as Trustee. A court may review contemporaneously-executed mortgage assignments to determine if they included language transferring all of the mortgagor's rights and interests in the mortgage loan, as well as referring to an accompanying promissory note, in order to determine an intention to transfer enforcement rights when proper negotiation of an instrument does not occur. *Gardner*, supra. In this case, no additional evidence demonstrating intent to transfer the Note from either Chase as Indenture Trustee to BoNY as Trustee or from Chase as Indenture Trustee to Plaintiff. Plaintiff attached the Lost AoM Affidavit to the complaint, purporting to explain that an assignment of mortgage from BoNY as Trustee to Plaintiff was unobtainable and unrecordable; the affidavit remains silent as to whether the lost mortgage assignment sought to transfer all of the assignor's right and interest in the subject mortgage loan or referenced the Note.

Paulus's testimony also failed to provide additional evidence of any intent to transfer the Note either from Chase as Indenture Trustee to BoNY as Trustee, or from Chase as Indenture Trustee to Plaintiff. As noted earlier, Paulus testified only to the fact that Plaintiff obtained possession of the Note from Dreambuilder, another entity that never properly held the Note, by purchasing a pool of mortgages and promissory notes from it. Nothing else in this case's evidentiary record offers any indication that an intent existed to transfer the Note from Chase as Indenture Trustee to BoNY as Trustee, or from Chase as Indenture Trustee to Plaintiff.

### 3. Plaintiff Failed to Establish That it is the Party Entitled to Enforce the Mortgage

The Mortgage was originated by Millennium and assigned from it to Chase as Indenture Trustee. On or about September 8, 2014, Plaintiff recorded the Lost AoM Affidavit. In the Lost

AoM Affidavit, Plaintiff stated that an assignment of Mortgage from BoNY as Trustee to Plaintiff was unobtainable and unrecordable; the Lost AoM Affidavit appears to have been an effort by Plaintiff to bridge the gap in mortgage assignments from Chase as Indenture Trustee to Plaintiff. As noted earlier in this decision, however, Chase as Indenture Trustee and BoNY as Trustee are two wholly-separate entities; no connection between them has been established. Notably, the record fails to include any evidence of a mortgage assignment from Chase as Indenture Trustee to BoNY as Trustee.

Assuming, *arguendo*, that a gap in the chain of mortgage assignments from Chase as Indenture Trustee to BoNY as Trustee did not exist, the Lost AoM Affidavit would not cure the remaining defect in the chain of assignments, namely the lack of a mortgage assignment to Plaintiff. The Lost AoM Affidavit recites certain facts concerning the circumstances behind the lack of a mortgage assignment to Plaintiff. The Lost AoM Affidavit does not by itself, however, act as an instrument capable of transferring the Mortgage and any right to enforce its terms. Similar to affidavits reciting facts related to title or affidavits describing a mistakenly-released mortgage, the Lost AoM Affidavit only recites facts that provide context for an issue affecting an interest in real property. Without some additional equitable relief sought (a declaratory judgment count or a claim asserting an equitable assignment, for example) in conjunction with its presentation, the Lost AoM Affidavit, much like an affidavit reciting facts related to title, has no effect. As affidavits reciting facts related to title serve a purpose similar to the Lost AoM Affidavit in this case, and as no case law concerning a lost mortgage assignment affidavit could be found, the Magistrate finds the holdings in *Catawaba West, Inc. v. Domo*, supra, and *The Croghan Colonial Bank v. Olena Food Farm, Inc.*, supra, to be persuasive and instructive regarding the issue of the effect, if any, of the Lost AoM Affidavit.

A review of the complaint reveals that Plaintiff asserts its status as the proper party capable of enforcing the terms of the Mortgage, stating that the Lost AoM Affidavit grants it the status of holder of the instrument. The complaint does not, however, include any additional counts for equitable relief that address the lack of an actual mortgage assignment to Plaintiff or Plaintiff's entitlement to enforce the Mortgage; the additional counts would breathe life into the facts recited in the Lost AoM Affidavit. See *Catawaba West, Inc.*, supra. The lack of any additional relief renders the Lost AoM Affidavit simply an affidavit and leaves unresolved the issue of the lack of an assignment of mortgage to Plaintiff. As Plaintiff cannot present an actual mortgage assignment to itself and has not sought any additional findings from this Court that would address the lack of the mortgage assignment, Plantiff has failed to establish its ability to enforce the terms of the Mortgage.

### 4. Without Establishing its Status as Either Holder of the Note or the Mortgage, Plaintiff Lacks Standing to Bring This Case

Plaintiff asserted that it was, at the time of the filing of the complaint, and currently remains, the holder of the Note, a status purportedly imbuing Plaintiff with standing to bring this case. Plaintiff failed, however, to establish its status as a "person entitled to enforce" the Note, as Plaintiff could establish neither that it was a holder of the Note through negotiation, nor a nonholder of the Note in possession with the rights of a holder. Additionally, the record fails to include any evidence capable of demonstrating an intention to transfer the Note either from Chase as Indenture Trustee to BoNY as Trustee, or from Chase as Indenture Trustee directly to Plaintiff, given the defect in the chain of transfers of the Note described earlier in this decision.

Plaintiff also failed to demonstrate its status as the holder of the Mortgage and the proper party entitled to enforce its terms. In an effort to establish itself as the holder of the Mortgage,

Plaintiff presented the Lost AoM Affidavit, rather than an actual assignment of mortgage to itself; Plaintiff did not, however, plead any additional equitable relief that would give real effect to the facts contained in the affidavit. By itself, the Lost AoM Affidavit simply advised the Court that an assignment of mortgage to Plaintiff was unavailable. Additionally, Plaintiff failed to explain how either the Lost AoM Affidavit or any other evidence submitted by Plaintiff bridged the gap in mortgage assignments between Chase as Indenture Trustee and BoNY as Trustee.

Without demonstrating its status as "holder" of the Note or the Mortgage, Plaintiff cannot establish its standing to bring this case. Without establishing Plaintiff's standing to bring this case, this Court lacks jurisdiction to consider this case. Without jurisdiction over this case, the case can be considered as never having properly existed. As this action never properly existed, dismissal of the complaint without prejudice is an appropriate remedy. *Kuchta*, supra.

## III.    CONCLUSION

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that the complaint is dismissed without prejudice, as this Court lacked jurisdiction to consider the action resulting from Plaintiff's failure to establish its standing to bring the case.

**IT IS SO ORDERED.**

Magistrate Christopher E. Day

A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ. R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ. R. 53(D)(3)(b).

## CERTIFICATE OF SERVICE

Copies of the foregoing have been sent by ordinary U.S. Mail, or via email if an email address is available in the court's case management system, by the Clerk of Court to the following parties or their counsel of record:

**DANIEL O. BARHAM, ESQ.**
BARHAM LEGAL LLC
2644 KULL ROAD
LANCASTER, OH  43130
*COUNSEL FOR PLAINTIFF*

**WILLIAM C. BEHRENS, ESQ.**
THE DANN LAW FIRM CO., LPA
PO BOX 6031040
CLEVELAND, OH  44103
*COUNSEL FOR DEFENDANT, KAREEMAH H. WILLIAMS*

**BILL L. PURTELL, ESQ.**
LERNER, SAMPSON & ROTHFUSS
P.O. BOX 5480
CINCINNATI, OH  45201
*COUNSEL FOR DEFENDANT, US BANCORP SUCCESSOR
BY MERGER TO STAR BANK, N.A.*

**CUYAHOGA COUNTY TREASURER**
2079 EAST 9TH STREET
CLEVELAND, OHIO  44115
*DEFENDANT*

**JOSEPH TESTA, OHIO TAX
COMMISSIONER
STATE OF OHIO DEPARTMENT OF
TAXATION**
PO BOX 530
COLUMBUS, OHIO  43216-0530
*DEFENDANT*

Copies mailed by Clerk: _A. Waller_      Date: _3·26·18_